[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This dissolution of marriage action was filed in Norwich Superior Court on April 17, 2001. The complaint seeks; dissolution of the marriage; joint legal custody of the two minor children; child support; allocation of debt; equitable distribution of real and personal property; alimony; and such other relief as the court deems just and proper.
The parties resolved all custody and visitation issues by agreement on February 22, 2002 before the court (Devine, J.). That agreement is incorporated into this court's final orders. A trial was held on all financial issues in Norwich on April 11, 2002.
Six witnesses testified at the trial; Mary Ann Kryman, director of nurses at plaintiff's place of employment; Officer Curtis of the Norwich Police Department; Mr. Michaud, the plaintiff's father; David Waterman, a Norwich resident; and the parties. From their testimony and all of the exhibits introduced at trial, the court finds the following facts.
The parties were intermarried on April 20, 1991 in Jewett City, Connecticut. Two children are issue of the marriage; Nicholas Joseph, born October 23, 1994 and Jacob Matthew, born February 18, 1999. They acquired the current marital residence at 54 Mohegan Park Road in 1995. The home is a duplex and the parties collect a rent of approximately $600.00 per month from the other unit. This property currently has a fair market value of $143,000.00, encumbered by a $90,000.00 mortgage. The parties also own a small adjoining parcel (58 Mohegan Park Road) which value is less than $1,000.00. The personal property of the parties has been divided except for a list of disputed items (Court Exhibit A), which the court divided in its orders.
The plaintiff is now thirty years old and generally enjoys good health. The plaintiff worked as a hairdresser (she still maintains her license) until she was hired at Colchester Nursing and Rehabilitation in 1995. She remains employed as a certified nurse's assistant being paid at the rate of between $14.00 and $15.00 per hour. The plaintiff enjoys a flexible work schedule both in terms of hours and shifts. She has always worked around the defendant's schedule and has put in as few as eight hours per week and as much as forty hours per week, depending on the needs of the family. CT Page 5813
In October of 2001, the plaintiff hurt her shoulder at work. Currently, she has been approved to work light duty. The plaintiff testified that she and her doctor expect a full recovery. Mary Ann Kryman testified that, in general, there were hours available, even at light duty, should the plaintiff desire to increase her hours.
The defendant is now thirty-five years old and works full-time at Rand Whitney Containerboard. He maintains a rotating twelve-hour shift which creates large blocks of free time. The defendant was in an auto accident in 1996. He also underwent surgery in April 2000 for a back, shoulder and neck injury. Despite these injuries, the defendant remains fully employable as reflected in his financial affidavit. The defendant maintains a 401(k) plan which has an approximate value of $15,000.00. The defendant is currently a plaintiff in a pending lawsuit which may result in compensation for his injury and pain and suffering.
The plaintiff claimed that early in the marriage a problem surfaced. She said that in 1993 she left the marital home for six months because of issues surrounding the defendant's drinking. She said that he stayed out late, frequented various pubs, had an unacceptable circle of friends and was otherwise inattentive to his marriage. The defendant acknowledged the problem, addressed the issue and by the end of 1993, the parties had reunited. Shortly thereafter, the couple bought the marital home and began their family. The drinking issue has not resurfaced since, and the court finds that this did not contribute to the breakdown of the marriage.
June 2000 is the time that the plaintiff claims the marriage broke down. She had testified that around the time of the defendant's surgery in April 2000, she began to question the relationship in her own mind. Around this time she said her husband's moods became unpredictable and he became unreliable. She points to a specific incident in June of 2000 where the defendant's conduct became particularly inappropriate when he had a severe outburst at a family gathering. She said she "had it" with his foul language and rude statements.
The plaintiff admitted being friendly with a third party male. She said that she met him in November 2000 when he was a patient at her place of employment. She acknowledges going to his residence in the late night and early morning hours as much as once per week. She denied any romantic or sexual ties to the third party male. The plaintiff also admitted to terminating an eight week pregnancy in December of 2000. She said that she went to Planned Parenthood instead of her own doctor so she could keep the event private.
The defendant learned of the early termination of the pregnancy in CT Page 5814 March 2001 when he found a document that verified the event. Around the same time, he learned of the relationship with the third party male when his wife's Jeep was seen in his driveway. The defendant further testified that he had not had sexual relations with his wife since his surgery in April of 2000.
Based on these facts, and all of the evidence, the Court finds that the acts of the plaintiff were the primary cause of the irretrievable breakdown of this marriage. It is clear to the Court that the plaintiff had lost her affection for the defendant even before April 2000 yet she took no affirmative action toward terminating her relationship or trying to fix it until her husband discovered her secrets. It is equally clear to the Court and it so finds that the secret relationship with the third party male was inappropriate and a cause of the marital breakdown. The Court further finds that the plaintiff's secretive termination of her pregnancy was a significant factor in the breakdown of the marriage. Although the Court cannot determine the identity of the male who contributed to the plaintiff's pregnancy, the Court does find credible the defendant's testimony that he did not have sexual relations with the plaintiff and was thus not the cause of her pregnancy.
The court finds that it has jurisdiction; the complaint was properly served; the matter has been pending for more than ninety days; one of the parties has resided within the state of Connecticut for one year prior to the filing of this action. The other allegations in the complaint are proved including the fact that the marriage has irretrievably broken down. The Court will dissolve the marriage based on such breakdown.
The Court in entering its other orders, has considered the provisions of Connecticut General Statutes §§ 46b-40, 46b-56, 46b-62, 46b-81,46b-82 and all other relevant statutes and evidence. In entering its financial orders, the court used a 28-hour work week for the plaintiff and a $100 per week added income for the defendant as a result of the rental income.
 ORDERS
CUSTODY AND VISITATION (BY AGREEMENT 2-22-02, DEVINE, J.)
1.) The parties shall share joint legal custody. Plaintiff mother shall have physical and residential custody. The defendant father shall have a reasonable access schedule to include:
Father shall have visitation with the minor children from 3:00 p.m. to 3:00 p.m. on his days off from work, but not to exceed 3 days at any one time. When the defendant has a full week off once per month he will also CT Page 5815 have Thursday from 3:00 p.m. through Friday at 3:00 p.m. Every other month father shall have children from Wednesday at 6:30 p.m. to Thursday at 3:00 p.m.
The parents shall insure that all personal belongings of the children (toys, books, pictures, etc.) are apportioned between their two residences to assist the children toward a healthy acclimation to the new arrangement. The parents should also make an effort to insure that the children not have to trade clothing (with the exception of outer wear garments such as coats, hats, etc.) between the two residences of the parties.
Both parties shall endeavor to schedule extra-curricular activities at times other than the other party's periods of access, unless the parties can agree otherwise. Both parties shall make every effort to provide extra-curricular activities requested by their children. Presently both parties agree to bring Nicholas to all NYSC soccer sessions at Teachers Memorial School for the 2002 session. The parent who has the children during those periods of time when the children have extra-curricular activities or social engagements shall be responsible for the transportation of the children to and from those events, unless otherwise agreed.
The parties shall each inform the other party immediately of any medical issues, which arise during their period of access.
During the Christmas/New Year break the parents shall split it so that in the even years the children shall spend the earlier part of the break through 5:00 p.m. on December 28th, with their mother; the remainder of the break to be spent with father until 3:00 p.m. the day before school resumes.
In the even years father shall have access with the children during the early part of the break.
Both parties agree that the parent without access during the early part of Christmas break shall have access with the children from 11:00 a.m. to 6:00 p.m. on Christmas Day.
Major holidays will be alternated between the parties by an "odd/even" year designation as follows:
(i) For Easter mother shall have access from 1:00 p.m. — forward in the even years;
(ii) Thanksgiving (from noon forward) in the odd years; CT Page 5816
(iii) and the period from July 3rd at 5:00 p.m. through July 5th
10:00 a.m. in the odd years.
The defendant father shall have the opposite access. All other holidays shall be shared equally on an alternating basis, (i.e., if mom has access on one unspecified holiday, the next specified holiday will be with dad). Additionally, each party shall have the minor children on that party's respective birthday. On Mother's Day mother shall have access, as will father on Father's Day.
If the work schedule of one of the other party's shall not permit him/her to have the holiday access to which he/she is entitled, the parties shall endeavor to modify the schedule in a manner that will allow that party alternative contact. The alternative arrangement should be reasonable and geared toward maximizing the children's holiday enjoyment.
The parties shall each maintain their respective present life insurance policy(ies) up to a maximum amount of $100,000.00 naming the minor children as sole irrevocable beneficiaries and naming the other as trustee until the child reaches the age of 19 or graduates from high school, whichever is sooner. Both parties shall execute an authorization so that the other party can periodically ensure the policy is in good standing.
The parties may mutually agree to modify as necessary the provisions related to visitation given their work schedules, illness of the parties or the minor children and other unforeseen events.
Mother shall notify father of medical appointments, extra-curricular and social appointments, and school conferences involving the children. Father shall likewise notify mother where he lives.
Neither parent shall seek to prevent the other parent from attending scheduled medical-appointments, school conferences, extra-curricular and religious programs in which the children will take part. The provision will be modified if the parents cannot maintain a peaceable, civil and reasonable deportment in the presence of the children.
Each parent may, as joint custodian, if applicable, obtain copies without the consent or authorization of the other party, of all academic reports, doctor reports, and school or day care reports respecting the children.
Both parents shall identify and acknowledge the other party as a parent CT Page 5817 and/or emergency contact on all registration forms respecting the children's school, medical and extra-curricular activities.
Each parent agrees to reasonably modify the access schedule to insure that the children do not miss scheduled events involving close family members like weddings and christenings, as well as, unforeseen events like funerals. Further, the parties shall also endeavor to insure that the children do not miss award ceremonies and school social events in which they wish to participate because of the access schedule. Each parent shall ensure that the children attend school. If the child is out of school for two days or more then the child shall be seen by the child's physician and the parent shall follow the physician's orders. Each parent shall make every effort to see that the children attend school each and every day and each parent will promptly assist the children with homework when the children are in their respective care.
The parties agree not to discuss their differences concerning the facilitation of any part of this agreement with or in the presence of their children as such may prove harmful to them.
Defendant father, as previously ordered, shall pay the retainer to Attorney Williams.
A.D. 1. Father shall have exclusive use and possession of the marital residence starting from today's date until date of judgment.
AD2. This schedule shall begin on today's date and the father shall have the children on Wednesday during his week off during February. From then on the schedule shall alternate.
AD3. Father shall pay mother $160.00 week in child support without prejudice. Said order shall be secured by an Immediate Wage Withholding.
AD4. The issue of a friend of Mrs. Daigle and all financial issues shall be reserved for further litigation.
AD5. Parties further agree that this temporary agreement which is made a temporary order of the court will be incorporated in the final orders of the court at the time of trial without a hearing concerning issues of custody, visitation. All other matters shall be left to the determination of the trier of fact at trial or agreement of the parties approved by the court at time of trial.
CHILD SUPPORT
The defendant is to pay child support in the amount of $190.00 per CT Page 5818 week. Such amount conforms to Connecticut's Child Support Guidelines using an earning capacity of 28 hours per week at $14.00 per hour for the plaintiff and adding $100.00 to the defendant's net income ($533.89) stated in his financial affidavit. Said sum shall be secured by contingent wage withholding.
ALIMONY
The defendant shall pay to the plaintiff alimony in the amount of $100.00 per month on the first of each month and commence on July 1, 2002. Said alimony shall continue for five years. Said alimony is non-modifiable as to term and shall terminate sooner on the first of occurrence of any one of the following events;
a. death of either party
b. remarriage of the plaintiff
c. cohabitation by the plaintiff by statute.
REAL PROPERTY
The plaintiff shall quit-claim her right, title and interest in both 54 and 58 Mohegan Park Road to the defendant before June 1, 2002. She shall execute such deed to be held in escrow by plaintiff's attorney. The defendant shall refinance the property to remove the plaintiff's liability on the existing note and pay to the plaintiff $27,000.00 before September 1, 2002. Such payment represents compensation for the plaintiff's 50% interest in the real property.
If the defendant fails to pay such sum before such date, the quit-claim deed shall be returned to the plaintiff and the property shall be listed for sale, with a licensed realtor, at a price of $143,000.00 on September 1, 2002. Upon sale, the plaintiff wife shall be entitled the first $27,000.00 of the net proceeds; the defendant husband shall be entitled to the next remaining net proceeds up to $27,000.00 and any net proceeds more than $54,000.00 shall be shared equally by the parties. "Net proceeds" are defined as the gross sales price minus the sum of the following: (1) current mortgage balance (2) adjustment for taxes, insurance and the closing costs including the broker's fee and (3) a reasonable attorney's fee. The defendant shall hold the plaintiff harmless for any mortgages, liens, taxes or insurance of 54, 58 Mohegan Park Road until she is paid by a refinance or the real property sold and proceeds divided as ordered in this paragraph. The court shall retain jurisdiction over the real property in this paragraph to ensure that the purpose and intent of the paragraph is carried out. The court shall CT Page 5819 determine the listing price, sales price and terms of sale upon any disagreement of the parties.
DAY CARE
Each party shall bear the cost of Qualified Day Care Cost, as defined by the Child Support Guidelines, in the amount of 50-50 which conforms to said Guidelines.
LIFE INSURANCE
Each party shall procure and maintain a life insurance policy in the amount of $100,000.00 and name their two children as equal beneficiaries, and name the surviving spouse as trustee. Said policies shall be obtained before September 1, 2002 and must be maintained until the youngest of the two children reaches the age of 18 years old. Each party shall execute authorization for the other to verify the status of the policies.
HEALTH INSURANCE
The defendant shall maintain health insurance coverage for his minor children as is available through his employment. Each party shall maintain their own health insurance through their respective place of employment at their own cost.
UNREIMBURSED MEDICAL
The parties shall share the unreimbursed medical expenses of the children equally, after the plaintiff pays the first $100.00 in any calendar year. The 50%-50% division is found to conform with Connecticut Child Support Guidelines.
DEPENDENCY EXEMPTION
Each parent may claim one child as an IRS deduction until the oldest child reaches eighteen years old; at such time, the parties shall take the remaining child as a deduction in alternate years, with the custodial parent using the exemption first. The non-custodial parent shall not be entitled to such exemption if he is more than three consecutive weeks behind on his child support payments.
TUITION
Each party shall pay one half of any private school tuition costs incurred by either Nicholas or Jacob through their eighteenth birthday or CT Page 5820 when they graduate from high school, whichever occurs first.
PENSIONS
The defendant shall transfer by way of Qualified Domestic Relations Order (QDRO) 50% of the present value of Kraft Group Retirement and 401 (K) as listed on his financial affidavit. Said present value is $15,032.00. Said QDRO shall be prepared by the plaintiff's attorney. The plaintiff shall be responsible for any tax consequences from said transfer. The plaintiff shall pay for the cost to prepare the QDRO. The court shall retain jurisdiction to insure that the purpose and intent of this paragraph is carried out and shall have the power to modify this paragraph if required to comply with the instructions of the plan administrator.
OTHER ASSETS
Each party shall retain all other assets as listed on his/her financial affidavit except that the plaintiff shall keep the Jeep with all its liabilities and encumbrances and the defendant shall own the Honda with all its encumbrances and liabilities. Each shall hold the other harmless from liability on the obligations each is ordered to pay.
DEBTS
Each party shall pay the debts as listed on their financial affidavit except that the plaintiff shall pay $1,500.00 of the Bank of America credit card listed on the defendant's financial affidavit with a balance due of $3,067.14. She shall pay $50.00 per month directly to the defendant, for 30 consecutive months beginning on September 1, 2002, unless she chooses to sooner pay the balance in full.
2001 TAX RETURN
The parties shall file a joint tax return for 2001 earnings. Any payment or refund shall be shared equally by the parties as shall the cost of preparing such tax return.
PERSONAL INJURY LITIGATION
When and if the defendant receives an award or settlement as a result of his current personal injury lawsuit, in which he is represented by Attorney Martin Rutchik, he shall dispose of the net proceeds in the following manner:
1. 50% shall be retained by the defendant. CT Page 5821
2. 50% shall be placed in separate trust accounts, in equal amounts, for the parties' minor children Nicholas Joseph and Jacob Matthew, with the father as trustee.
When each child reaches the age of 18, the funds shall become the property of said child. The defendant shall provide annual verification of such trust accounts and verification of the final disbursement to the plaintiff
PERSONAL PROPERTY
The disputed personal property items on Court Exhibit A shall be divided as follows; except that the defendant shall be allowed to make copies of items capable of reproduction and then give the originals to the plaintiff within the specified time period;
Plaintiff Defendant
Camcorder with Tripod, Battery Push mower Two Pair Prescription Glasses Snow blower Plaintiff's Clothes Weed mower Hope chest Riding mower Two baby blankets Toy box Copies of all joint documents 100 Club Badge Gift Certificate to Home Depot Appliances Treadmill Television Dishes Bed Hairdresser Supplies Web TV Crystal Child Bedroom Furniture Mahogany Shelf Curtains Osterizer Blender Stereo Living Room Set Grill Dining Room Set Battery Charger Ornaments Air Compressor Living Room Professional Pictures Wall Hangings Home Videos CDs, Home and VHS Movies
All personal property shall be delivered to the proper party on a date or dates upon which the parties mutually agree. Said date shall be mediated by their attorneys. If the parties fail to agree, then all personal property shall be delivered on June 15, 2002 at 11:00 a.m. at 54 Mohegan Park Road.
MAIDEN NAME
CT Page 5822
The plaintiff shall have her maiden name of Ann L. Michaud restored.
ATTORNEY FEES
Each party shall be responsible to pay their own attorney's fees.
Scarpellino, J.